UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NAIAS, L.L.C.,
a Michigan limited liability company,

       Plaintiff,                       Case No.:

vs                                      Hon.:

HOUSTON CASUALTY COMPANY,
a Texas domiciled surplus lines property
and casualty insurer,

       Defendant.

---

Douglas Young (P43808)
YOUNG INSURANCE LAW
Co-Counsel for Plaintiff
117 W. 4th Street, Suite 201
Royal Oak, MI 48067
(313) 983-1235
dyoung@younginsurancelaw.com

ABBOTT NICHOLSON, P.C.
By:   Robert Y. Weller II (P31148)
And:  Kristen L. Baiardi (P71931)
Co-Counsel for Plaintiff
1900 W. Big Beaver Rd., Suite 203
Troy, Michigan 48084
(313) 566-2500
ryweller@abbottnicholson.com
klbaiardi@abbottnicholson.com

---

**COMPLAINT FOR DECLARATORY JUDGMENT,
<u>MONETARY DAMAGES AND JURY DEMAND</u>**

NOW COMES Plaintiff NAIAS, L.L.C., by and through its attorneys, YOUNG INSURANCE LAW, and for its Complaint for Declaratory Judgment and Monetary Damages against Defendant HOUSTON CASUALTY COMPANY, states as follows:

## THE PARTIES

1.      Plaintiff NAIAS, L.L.C., ("NAIAS") is a Michigan limited liability company with its principal place of business in Troy, Michigan,

2.      Defendant Houston Casualty Company ("HCC") is a Texas corporation authorized to issue surplus lines property and casualty insurance policies in the State of Michigan.

## JURISDICTION AND VENUE

3.      This action is brought pursuant to 28 U.S.C. §§ 2201-2202 and seeks a declaratory judgment as to the rights and duties of the parties under the HCC Event Cancellation Policy, No. 19/7004321, for the policy period December 16, 2019 to June 21, 2020, for the cancellation of the 2020 North American International Auto Show [The Gallery Event and NAIAS Auto Show & Preview Days] (collectively the "Auto Show") which had been scheduled for the period of June 7 through June 20, 2020.

4. Pursuant to 28 U.S.C. § 1332, this Court has original jurisdiction because the matter in controversy exceeds $75,000 and is between citizens of different states.

5. Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391.

6. As a result of a dispute regarding the amount of insurance coverage available to NAIAS for the cancellation of the Auto Show under the HCC Event Cancellation Policy, No. 19/7004321, there is an actual case or controversy between the parties.

## THE CANCELLATION OF THE AUTO SHOW

7. On March 28, 2020, the 2020 Auto Show that was scheduled to be held in June 2020 was cancelled due to the COVID-19 pandemic and the Federal Emergency Management Agency's ("FEMA") utilization of the Auto Show venue, the TCF Center, as a field hospital.

8. HCC was timely advised of the 2020 Auto Show's cancellation.

9. The cancellation of the 2020 Auto show was an insured event under the HCC Event Cancellation Policy.

## THE HCC EVENT CANCELLATION POLICY

10. The HCC Event Cancellation Policy is attached hereto as **Exhibit A**.

11. The material terms and conditions of this policy are:

\* \* \* \*

**SECTION  I - COVERAGE A, B & C**  [Page **1** of **14**]

**A.  INSURING AGREEMENTS:**

**COVERAGE A.  EVENT CANCELLATION**

We[1] will indemnify you[2], up to the combined Limit of Insurance for Coverage A[3] . . . for your loss as a direct result of **cancellation**[4]. . . of the **insured event** ["The Gallery Event and NAIAS Auto Show & Preview Days"] . . . .

\* \* \* \*

**B.  APPLICATION OF COVERAGES:**

In order for insurance to apply to Section I, all of the following conditions must be met:

1.      the loss must be the direct result of an unexpected cause beyond your control, the control of the organizers of the **insured event**, the control of the attendees or exhibitors at the **insured event**, and the control of your financial supporters;

2.      the loss must not be the direct or indirect result of any excluded cause as shown in:

      a.      Section I, Part D Exclusions; and

      b.      Section V. - General Exclusions of this insurance; and

      c.      you must comply with all other terms and conditions of this policy.

---

[1] Houston Casualty Company

[2] NAIAS, LLC

[3] $250,000 - The Gallery Event
  $5,320,294 - NAIAS Auto Show & Preview Days

[4] **Cancellation** means the physical or legal inability to commence the insured event at the regularly scheduled date and time of commencement.  [Section VI - DEFINITIONS, 5.; Page **10** of **14**]

## C.  CALCULATION OF LOSS  [Page **2** of **14**]

Subject to the limit of insurance with respect to Coverage A, we will indemnify you for the greater of:

1)      The total of **expenses** incurred plus actual loss from **insured financial commitments,** less any recoveries obtained, and less **gross revenue** retained after refunds, whether such refunds are contractual or voluntary; [the "Total Expenses Calculation"] or

2)      The loss of **gross revenue**[5] (including **gross revenue** returned, whether contractual or voluntary) that would have been received had the **insured event** taken place as originally scheduled and the loss from **insured financial commitments**[6], less any recoveries made and **expenses**[7] not incurred.   [the "Gross Revenue Calculation"]

\* \* \* \*

---

[5] **Gross revenue** means all monies paid or payable to you from ticket sales, Any Day Passes, Supplier Preview Days, and Parking passes for the Auto Show and ticket sales for the Gallery Event only arising out of the insured event. [Endorsement #3]
[Endorsement #3]

[6] **Insured financial commitments** means, your written financial commitments unless you are released or discharged from such financial commitments, which meet all of the following conditions:
  a.  Such commitments are necessary for the operation or commencement of the **insured event** and are intended to be discharged by a third party;
  b.  Such commitments are made prior to any incident which could give rise to a covered loss with respect to the **insured event** for which the **insured financial commitment** is undertaken.

[Section VI - DEFINITIONS, 12.; Page **10** of **14**]

[7] **Expenses** means your costs and charges in organizing, running and providing services for the **insured event**.  [Endorsement #3].

**E.  EXTENSIONS OF COVERAGE:**  [Page **4** of **14**]

**4.  Additional Marketing Expenses** - subject to a maximum limit of, but not exceeding, $100,000, we will indemnify you for marketing expenses incurred by you for public relations and marketing of the rescheduled **insured event** or if not rescheduled, the corresponding **insured event** that is held the following year, in order to reduce the adverse effect of the **cancellation, abandonment, postponement, curtailment** or **relocation** of the insured event, subject to:

**a.    Cancellation,      abandonment,     postponement, curtailment** or **relocation** of the insured event for reasons covered under this policy; and

**b.**    all of the following conditions:  [Page **5** of **14**]

(1)    The **insured event** has been held for at least three (3)  consecutive years; and

(2)    There have been at least two (2) other competitors in the marketplace staging events of similar size; and

(3)    You demonstrate that the expenses incurred for the public relations and marketing are equitable and of practical benefit; and

(4)    All expenses incurred are agreed upon in writing by us.

* * * *

12.    The  HCC  Event  Cancellation  Policy  has  a  Combined  Limit  of Insurance for Event Cancellation (Coverage A) in the amount of $5,570,294.

13.    The  HCC  Event  Cancellation  Policy  also  contains  $100,000 of insurance coverage for Additional Marketing Expenses.

14.    HCC has been investigating and adjusting NAIAS's claim since April 2020.

15.    NAIAS has fully cooperated with HCC in its investigation of this claim.

16.    On December 23, 2020, HCC paid what it considered to be an undisputed partial claim payment in the amount of $2,400,000.

17.    On March 10, 2021, HCC paid what it considered to be an additional undisputed partial claim payment in the amount of $878,938.

18.    As of today's date, HCC has paid a total of $3,278,938 of the Event Cancellation Policy Combined Limit of Insurance for Event Cancellation (Coverage A) of $5,570,294.

19.    As of today's date, HCC has paid none of the HCC Event Cancellation Policy's $100,000 limit for Additional Marketing Expenses.

20.    There remains due and owing under the HCC Event Cancellation Policy $2,391,356 ($2,291,356 under Coverage A and $100,000 of insurance coverage for Additional Marketing Expenses).

21.    Based upon HCC's willful failure to fully and completely resolve this claim, NAIAS has instituted this action.

## COUNT I – DECLARATORY JUDGMENT

22.    Plaintiff NAIAS restates and realleges the allegations set forth in paragraphs 1-21 as if set forth herein word-for-word.

23.    NAIAS seeks a determination of the rights and duties of the parties and a declaration that insurance coverage exists under the HCC policy up to the full combined policy limit plus the additional coverage for marketing expenses.

WHEREFORE, Plaintiff NAIAS, L.L.C., respectfully requests this Honorable Court declare the rights and duties of the parties under the HCC Event Cancellation policy described above.

## COUNT II – BREACH OF CONTRACT

24.    Plaintiff NAIAS restates and realleges the allegations set forth in paragraphs 1-23 as if set forth herein word-for-word.

25.    Under the HCC Event Cancellation policy, NAIAS is entitled to claim the *greater* of the Total Expenses Calculation or Gross Revenue Calculation above.

26.    HCC has failed to calculate and otherwise refused to pay NAIAS based upon its claim calculated under the Total Expenses Calculation.

27.    HCC has wrongfully asserted inappropriate and/or inapplicable policy defenses, deductions and supposed recoveries to deny full insurance coverage to NAIAS under the HCC Event Cancellation policy.

28.     HCC's actions in denying full insurance coverage to NAIAS constitutes a material breach of the HCC Event Cancellation policy.

29.     HCC's actions in denying full insurance coverage to NAIAS for a claim that is not reasonably in dispute constitutes a violation of MCL 500.2006.

30.     NAIAS has suffered damages and will continue to suffer damages as a direct result of HCC's material breaches of the HCC Event Cancellation policy.

WHEREFORE, Plaintiff NAIAS, L.L.C., respectfully requests this Honorable Court enter a Judgment in its favor against Defendant Houston Casualty Company in an amount in excess of $75,000, plus pre-judgment, post-judgment interest, penalty interest pursuant MCL 500.2006, costs, attorneys' fees and any other additional relief, which this Court finds to be appropriate, equitable or just.

## <u>COUNT III – BAD FAITH</u>

31.     Plaintiff NAIAS restates and realleges the allegations set forth in paragraphs 1-30 as if set forth herein word-for-word.

32.     HCC is required to act in good faith with respect to their contractual duties and the claims administration under the HCC Event Cancellation policy.

33.     HCC's assertion that the HCC Event Cancellation policy does not provide for a greater recovery by NAIAS under the Total Expenses Calculation has been asserted in bad faith and in an improper attempt to avoid HCC's contractual

obligations as well as to improperly delay and prejudice NAIAS in the adjustment of its claim.

34.   HCC's actions in refusing to fully indemnify NAIAS constitutes an action in bad faith in an attempt to avoid HCC's contractual obligations as well as to improperly prejudice and delay NAIAS in the adjustment of its claim.

35.   HCC has intentionally disregarded the interests of their insured NAIAS and have asserted false policy defenses motivated by a desire to protect its own financial interests at the expense of their insured NAIAS.

36.   As a result of the aforementioned actions of HCC in bad faith, NAIAS has suffered additional damages exceeding its indemnification under the HCC Event Cancellation policy which include additional consequential damages and expense caused by HCC's ongoing failure to fully indemnify its insured NAIAS.

WHEREFORE, Plaintiff NAIAS, L.L.C., respectfully requests this Honorable Court enter a Judgment in its favor against Defendant Houston Casualty Company in an amount in excess of $75,000, plus pre-judgment, post-judgment interest, penalty interest pursuant MCL 500.2006, costs, attorneys' fees and any other additional relief, which this Court finds to be appropriate, equitable or just.

Dated:  March 11, 2021

Respectfully submitted,

YOUNG INSURANCE LAW

/s/ Douglas Young

Douglas Young (P43808)
Co-Counsel for Plaintiff
117 W. 4th Street, Suite 201
Royal Oak, MI 48067
(313) 983-1235
dyoung@younginsurancelaw.com

ABBOTT NICHOLSON, P.C.
By:    Robert Y. Weller II (P31148)
And:  Kristen L. Baiardi (P71931)
Co-Counsel for Plaintiff
1900 W. Big Beaver Rd., Suite 203
Troy, Michigan 48084
(313) 566-2500
ryweller@abbottnicholson.com
klbaiardi@abbottnicholson.com

## JURY DEMAND

Plaintiff NAIAS, L.L.C., respectfully requests a jury for all issues of fact raised by any party in this action.

Dated:  March 11, 2021          YOUNG INSURANCE LAW

/s/ Douglas Young
Douglas Young (P43808)
Co-Counsel for Plaintiff
117 W. 4th Street, Suite 201
Royal Oak, MI 48067
(313) 983-1235
dyoung@younginsurancelaw.com

ABBOTT NICHOLSON, P.C.
By:    Robert Y. Weller II (P31148)
And:  Kristen L. Baiardi (P71931)
Co-Counsel for Plaintiff
1900 W. Big Beaver Rd., Suite 203
Troy, Michigan 48084
(313) 566-2500
ryweller@abbottnicholson.com
klbaiardi@abbottnicholson.com

# EXHIBIT A



Houston Casualty Company
13403 Northwest Freeway, Houston, TX 77040 USA
Tel: 713-744-9695

Event Cancellation Policy

**for North American International Auto Show, LLC (NAIAS, LLC)**

by Specialty Group



**POLICY NUMBER: 19/7004321**

This insurance effected on behalf of:

THIS INSURANCE HAS BEEN PLACED WITH AN INSURER THAT IS NOT LICENSED BY THE STATE OF MICHIGAN. IN CASE OF INSOLVENCY, PAYMENT OF CLAIMS MAY NOT BE GUARANTEED.

North American International Auto Show,
LLC (NAIAS, LLC)
c/o RCWA, 26026 Telegraph Road, Suite 100
Southfield, MI 48033

provided for:

## EVENT CANCELLATION INSURANCE
### As per attached terms and conditions

by:

## HOUSTON CASUALTY COMPANY
13403 Northwest Freeway
Houston, Texas 77040
Telephone: (713) 462-1000
Facsimile: (713) 462-4210

Michael J. Schell
President and CEO

Secretary

In Witness Whereof, the Company has executed and attested these presents but this policy shall not be valid unless signed by a duly authorized representative of the Company.

**ALL CLAIMS TO BE REPORTED IMMEDIATELY TO HOUSTON CASUALTY COMPANY**

Attaching to and forming part of
Houston Casualty Company Policy No.  19/7004321

# EVENT CANCELLATION POLICY
## For Trade Shows/Conferences/Consumers Shows

**NOTICE:  THIS POLICY PROVIDES INDEMNIFICATION COVERAGE ONLY.  WE WILL REIMBURSE YOU FOR LOSS COVERED UNDER THE TERMS AND CONDITIONS OF THIS POLICY.**
**DECLARATIONS**

Policy Number: 19/7004321                     Renewal of: 18/7009928

Item 1.        NAMED INSURED AND ADDRESS:
               North American International Auto Show, LLC (NAIAS, LLC)
               c/o RCWA, 26026 Telegraph Road, Suite 100
               Southfield, MI 48033

Item 2.        POLICY PERIOD:
               From:  December 16, 2019          To: June 21, 2020
               12:01 AM.,  standard time at the address of the Named Insured as stated herein.

Item 3.  LIMITS OF INSURANCE

| | | |
|---|---|---|
| Coverage A:  Event Cancellation<br>Coverage B:  Enforced Reduced Attendance<br>Coverage C:  Failure to Vacate the Venue Limit | **As per attached Schedule of Insured Events** | Maximum combined limit for Coverages A, B, and C per each **insured event** (if no amount is shown here, see Insured Event Schedule) |
| Coverage D:  Physical Loss To Personal Property | **$500,000** | per loss |
| Coverage E:  Door Registration Receipts | **$500,000** | per loss |

Item 4.  PREMIUM:  $12,812, plus $1,671 Terrorism, plus $289.66 MI Surplus Lines Tax, plus $72.42 MI Regulatory Fee

Item 5.  PREMIUM DUE DATE:  December 16, 2019
               Premium is payable on or before the premium due date above or per the Schedule of Insured Events.

Item 6.  DEDUCTIBLE APPLICABLE TO COVERAGE B ONLY:  NIL%

**SCHEDULE OF INSURED EVENTS:**

| Insured Event | Event Date(s) | Premium Due Date | Premium | Venue | Combined Limit of Insurance for Coverage A, B, &C |
|---|---|---|---|---|---|
| See attached Schedule of Insured Events | See attached Schedule of Insured Events | Please see Item 5 above. | Please see Item 4 above. | See attached Schedule of Insured Events | **$5,570,294** |

**For insured events and venues not shown here, see attached Schedule of Insured Events.**
**SCHEDULE OF INSURED SPEAKERS OR ENTERTAINERS:**

| Insured Speaker(s) or Entertainer(s) | Insured Event |
|---|---|
| N/A | N/A |

**For insured speakers or entertainers not shown here, see attached Schedule of Insured Speakers or Entertainers.**

This insurance has been placed with an insurer that is not licensed by the State of Michigan. In case of insolvency, payment of claims may not be guaranteed.

**HOUSTON CASUALTY COMPANY**

By:  _____
**AUTHORIZED REPRESENTATIVE**

**Issue Date:  January 6, 2020**

Michigan Premium:   $14,483.00
                    Fees:   $64.00
Surplus Lines Tax / Regulatory Fee:   $289.66 / $72.42

Attaching to and forming part of
Houston Casualty Company Policy No. **19/7004321**
Schedule of Insured Events
Page 1 of 1

### SCHEDULE OF INSURED EVENTS

| Insured Event | Event Date(s) | Premium Due Date | Premium | Venue | Combined Limit of Insurance for Coverage A, B, &C | Coverage D | Coverage E |
|---|---|---|---|---|---|---|---|
| 1) The Gallery Event | 6/7/20 | Item 5-Declarations | $575, plus $75 Terrorism | Cobo Center, 1 Washington Blvd, Detroit, MI 48226 | $250,000 | $500,000 | $500,000 |
| 2) NAIAS Auto Show & Preview Days | 6/7/20 to 6/20/20 | Item 5-Declarations | $12,237, plus $1,596 Terrorism | Cobo Center, 1 Washington Blvd, Detroit, MI 48226 | $5,320,294 | $500,000 | $500,000 |
| | | **TOTAL:** | **$12,812, plus $1,671 Terrorism** | | **$5,570,294** | | |

PRG 2053 (07/05)

# EVENT CANCELLATION POLICY
## For Trade Shows/Conferences/Consumer Shows

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations.  The Named Insured is the only entity entitled to receive indemnification under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.  Other words and phrases that appearing in boldface print have special meaning.  Refer to Section VI. – DEFINITIONS.

In consideration of the payment of the premium by you and in reliance upon the statements in your Application incorporated herein by reference, we agree with you subject to all of the terms, exclusions and conditions of this policy, as follows:

# SECTION I – COVERAGE A, B, & C

### A.  INSURING AGREEMENTS:

#### COVERAGE A.  EVENT CANCELLATION

We will indemnify you, up to the combined Limit of Insurance for Coverage A, B, and C, for your loss as a direct result of **cancellation, abandonment, curtailment, postponement,** or **relocation** of the **insured event** to which this insurance applies.

#### COVERAGE B.  ENFORCED REDUCED ATTENDANCE

We will indemnify you, up to the combined Limit of Insurance for Coverage A, B, and C, for your loss as a direct result of **enforced reduced attendance** of attendees and exhibitors at the **insured event** to which this insurance applies.

#### COVERAGE C.  FAILURE TO VACATE THE VENUE

We will indemnify you, up to the combined Limit of Insurance for Coverage A, B, and C, for your failure to vacate the **venue** of the **insured event** at the termination of your leased tenancy with respect to the **insured event** to which this insurance applies.

### B.  APPLICATION OF COVERAGES:

In order for insurance to apply to Section I, all of the following conditions must be met:

**1.** the loss must be the direct result of an unexpected cause beyond your control, the control of the organizers of the **insured event**, the control of the attendees or exhibitors at the **insured event**, and the control of your financial supporters;

**2.** the loss must not be the direct or indirect result of any excluded cause as shown in:

    a.  Section I, Part D Exclusions; and

    b.  Section V. – General Exclusions of this insurance; and

**3.**  you must comply with all other terms and conditions of this policy.

## C.  CALCULATION OF LOSS

Subject to the limit of insurance with respect to Coverage A, we will indemnify you for the greater of:

**1)**  The total of **expenses** incurred plus actual loss from **insured financial commitments**, less any recoveries obtained, and less **gross revenue** retained after refunds, whether such refunds are contractual or voluntary; or

**2)**  The loss of **gross revenue** (including **gross revenue** returned, whether contractual or voluntary) that would have been received had the **insured event** taken place as originally scheduled and the loss from **insured financial commitments,** less any recoveries made and **expenses** not incurred.

### WITH RESPECT TO COVERAGE B:

With respect to coverage provided for **enforced reduced attendance**, we will deduct from the amount of the adjusted loss the deductible shown in the Declarations.  Subject to the limit of insurance, the amount of the adjusted loss with respect to Coverage B will be the **anticipated net revenue** minus **actual net revenue**.

### WITH RESPECT TO COVERAGE C:

Subject to the limit of insurance with respect to Coverage C:

**1.**  any claim for damages or expenses which you are legally obligated to pay the owners or management of the **venue** by reason of your failure to vacate the **venue** at the termination of your leased tenancy with respect to the **insured event;** and

**2.**  your direct and necessary additional expenses incurred by reason of your failure to vacate the **venue** at the termination of the leased tenancy with respect to the **insured event**.

## D.  EXCLUSIONS:

In addition to the exclusions in Section V. – General Exclusions which apply to Section I, the following exclusions also apply to this section:

**1.**  Financial Failure

    **a.**  Withdrawal, insufficiency or lack of finance however caused;

    **b.**  The financial failure of any venture;

    **c.**  Lack of adequate receipts, sales or profits of any venture;

    **d.**  Variations in the rate of exchange, rate of interest or stability of any currency;

    **e.**  Financial default, insolvency, or failure to pay any person, firm or corporation.

**2.** Lack of Support

    **a.** Lack of adequate response, support or withdrawal of such support by any entity;

    **b.** Lack of, or inadequate attendance or insufficient interest prior to attendance except as covered under Coverage B – **Enforced Reduced Attendance**.

**3.** Failure to Make Necessary Arrangements

    Your failure to:

    **a.** make all the preliminary arrangements essential to ensure that a satisfactory **insured event** can be held on the scheduled date. Preliminary arrangements shall include arrangements as a prudent organizer would have made considering the venue size, type of event and the period of time before the open date;

    **b.** ensure all licenses, visas, permits and authorizations are current for the term of this policy, and that all contractual arrangements have been confirmed in writing; or

    **c.** observe and comply with all federal, state, or local laws, ordinances and regulations.

**4.** Pre-existing Circumstances

    Circumstances existing or threatened at inception of the policy which were known to you or any of your officers, directors, partners, or risk managers as being circumstances that could possibly result in a loss under this policy, unless such circumstances were advised to us in writing by you or any of your officers, directors, partners or risk managers and we agree in writing to accept such circumstances.

**5.** Non-Appearance

    The non-appearance of any individual or group.

    However, this exclusion shall not apply to the non-appearance of an **insured speaker or entertainer**, if any, as shown in the Declarations. Such non-appearance must be solely and directly due to **accident**, **sickness**, or **unavoidable travel delay**.

    This exception does not apply to any loss, damage, cost, or expense of any nature directly or indirectly caused by, arising out of, contributed to by, resulting from, or in connection with the non-appearance of the **insured speaker or entertainer** as a direct or indirect result of:

    **a.** Air travel other than travel as a passenger by a regular airline or multi-engined charter aircraft on a regular air route.

    **b.** Any hazardous or capricious activity or lack of due care, diligence, or prudent behavior.

    **c.** Insufficient voice quality, unless directly due to **sickness** or **accident** occurring during the **insured event**.

    **d.** Any condition not common to both sexes.

    **e.** Any sexually transmitted diseases or their after effects.

**f.** Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC) howsoever this syndrome has been acquired or may be named.

**g.** The illegal possession or illicit taking of drugs and their effects.

**h.** Pre-existing conditions:  No coverage shall be provided under this non-appearance exception for any sickness or injury for which the **insured speaker** received medical treatment or advice within a 12 month period prior to the commencement of the policy period shown in the Declarations unless the condition was revealed to us and we agreed to provide coverage as evidenced by the endorsement attached to and made a part of this policy, and the **insured speaker or entertainer** followed all recommended medical advice for the treatment of the condition.

### E. EXTENSIONS OF COVERAGE:

**1.** **Extra Expense –** If a loss under Coverage A applies, this policy is extended to include direct and necessary additional expenses incurred by you over and above the total costs that would normally have been incurred to conduct the **insured event** in order to continue the normal operations of the **insured event**, subject to prior written approval by us.  The Limit of Insurance for this coverage is included in the Combined Limit of Insurance for Coverage A, B & C shown in the Declarations.  However, in the event the Combined Limit of Insurance for Coverage A, B & C is exhausted, we will pay an additional limit, up to $100,000., or a higher amount if agreed to by us and evidenced by endorsement attached to and forming a part of this Policy.

**2.** **Coverage for Supplemental Events –** In addition to the events listed in the schedule of insured events, this policy is extended to automatically (no application required) cover any additional indoor events you are holding that are scheduled to take place during the policy period, subject to:

   **a.** The **gross revenue** or **expenses** per **insured event** is no greater than $150,000; and

**3.** **Coverage for New Events –** This policy is extended to cover any newly organized event that is scheduled to take place during the policy period, subject to:

   **a.** The **gross revenue** or **expenses** per **insured event** are no greater than $250,000; and

   **b.** You provide us a fully completed and signed Event Cancellation Insurance Application no less than (14) days prior to the start of the event, we  accept coverage for the new **insured event** and it is specifically endorsed onto the policy for an additional premium**.**

**4.** **Additional Marketing Expenses –** subject to a maximum limit of, but not exceeding, $100,000, we will indemnify you  for marketing expenses incurred by you for public relations and marketing of the rescheduled **insured event** or if not rescheduled, the corresponding **insured event** that is held the following year, in order to reduce the adverse effect of the **cancellation, abandonment, postponement, curtailment** or **relocation** of the **insured event**, subject to:

   **a.** **cancellation, abandonment, postponement, curtailment** or **relocation** of the **insured event** for reasons covered under this policy; and

**b.** all of the following conditions:

    **(1)** The **insured event** has been held for at least three (3) consecutive years; and

    **(2)** There have been at least two (2) other competitors in the marketplace staging events of similar size; and

    **(3)** You demonstrate that the expenses incurred for the public relations and marketing are equitable and of practical benefit; and

    **(4)** All expenses incurred are agreed upon in writing by us.

**5.** **Additional Limit for Insured Financial Commitments –** Losses from Insured Financial Commitments are included in the Combined Limit of Insurance for Coverage A, B & C shown in the Declarations.  However, in the event the Combined Limit of Insurance for Coverage A, B & C is exhausted, we will pay an additional limit which shall be no greater than the amount equal to 20% of the Combined Limit of Insurance for Coverage A, B & C shown in the Declarations solely for losses from **Insured Financial Commitments** under Coverage A.

**6.** **Enforced Extended Stay** - It is hereby noted that this policy extends to provide coverage for **your** additional costs to cover hotels bills and other associated expenses arising as a direct result of **your enforced extended stay**, limited to a maximum benefit of $25,000.

For the purpose of this policy **enforced extended stay** is defined as:  the inability to complete **your** return journey back to the home departure airport as a direct result of any cause not otherwise excluded.

## SECTION II – COVERAGE D

**A. INSURING AGREEMENT:**

**COVERAGE D.  PHYSICAL LOSS TO PERSONAL PROPERTY**

Unless otherwise excluded, we will indemnify you for direct physical loss or damage to covered personal property, up to the Limit of Insurance for Coverage D shown in the Declarations.

**B. PROPERTY COVERED:**

Personal property owned, leased, rented by, or loaned to you to be used at the **venue** during the **insured event** or while in transit directly to or from the scheduled **venue** for the i**nsured event**.

**C. PROPERTY NOT COVERED:**

The following property is not covered:

**1.** Property sold, leased, rented, or loaned by you to others after said property leaves your care, custody, or control;

**2.** Automobiles and other vehicles licensed for use on the highway unless operated within the confines of the **venue** or unless intended for display, exhibition or demonstration at the **insured event**;

3. Accounts, bills, currency, food stamps, lottery tickets or other evidences of debt, **money**, notes or securities;

4. Jewelry, fine art, precious stones, and furs;

5. Animals;

6. Contraband, or property in the course of illegal transportation or trade;

7. Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

8. Electronic data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**D. COVERED CAUSES OF LOSS:**

We will indemnify you for loss or damage to covered property for risks of direct physical loss or damage unless the loss is excluded or otherwise limited by the terms of this policy.

**E. EXCLUDED CAUSES OF LOSS:**

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

In addition to the exclusions in Section V. – General Exclusions which apply to Section II, the following exclusions also apply to this section:

1. Vermin, insects, inherent vice, latent defect, wear, tear or gradual deterioration.

2. Inventory shortage or unexplained disappearance.

3. Artificially generated electrical current, including electrical arcing, that disturbs electrical devices, appliances or wires.

   But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by that fire.

4. Delay, loss of use, business interruption or any other consequential loss.

5. Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself.

6. Mechanical breakdown, including rupture or bursting caused by centrifugal force.

7. Marring or scratching.

**8.** Rain, snow, ice or sleet to personal property in the open.

**F. COVERAGE EXTENSIONS:**

**1. Valuable Papers And Records (Other Than Electronic Data)**

**a.** This insurance is extended to apply to the cost to replace or restore the lost information on your valuable papers and records for which duplicates do not exist kept at the scheduled **venue** for the **insured event**. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Section II. C. PROPERTY NOT COVERED, Paragraph 8.

**b.** Under this Extension, the most we will indemnify you to replace or restore the lost information is $2,500. Such amount is additional insurance.

**c.** We will also indemnify you for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The coverage provided under this subparagraph **1.c.** is included within and does not increase the limits of insurance applicable to Coverage D.

**2. Temporary Storage**

We will indemnify you for loss or damage to covered personal property while in temporary storage if such storage is necessary (i.e. you cannot deliver such personal property directly to the **venue**) while in transit directly to the scheduled **venue** for the **insured event**. Such extended coverage will apply to covered personal property stored for a maximum of ten (10) calendar days and is included within and does not increase the limit of insurance available under Coverage D.

# SECTION III. COVERAGE E

**A. INSURING AGREEMENT:**

**COVERAGE E.**

Unless otherwise excluded, we will indemnify you for any loss caused by the **theft** of **Door Registration Receipts** from: (i) the **venue** of the **insured event**, or (ii) while directly en route from the **venue** of the **insured event** to a depository institution in the vicinity of the **venue** and while in the care, custody, and control of two (2) **messengers**.

**EXCLUSIONS:**

In addition to the exclusions in Section V. – General Exclusions which apply to Section III, the following exclusions also apply to this section:

**1.** Any loss when the registration desk or place where **door registration receipts** are received is closed for business or temporarily unattended, unless the **door registration receipts** are in a locked safe and all safe keys have been removed.

**2.** All claims not advised to us within seven (7) working days of the date of loss.

**3.** Any loss when outside the **venue** unless the **door registration receipts** are in the care, custody and control of two (2) **messengers**.

**4.** Any loss resulting from accounting or arithmetical errors and omissions.

**5.** Loss of **door registration receipts** after such **door registration receipts** have been transferred, deposited, or surrendered to a depository institution or armored car service.

## SECTION IV. COVERAGE F – Golf Event Coverage

**A. INSURING AGREEMENT:**

**COVERAGE F – Golf Cancellation**

This insurance indemnifies You for Your Net Loss up to, but not exceeding $50,000 solely and directly the consequence of the **Cancellation** of a **Golf Event** due to Adverse Weather.

**Golf Event** means a golf tournament held by You as part of the **Insured Event.**

**Adverse Weather for Golf Events** means a minimum of two (2) inches of rain at the golf course where the golf is scheduled to take place, within the twenty-four (24) hours prior to the start of the **Golf Event,** to be verified by the nearest National Weather Service Station, and results in the necessary cancellation of the **Golf Event.**

**Calculation of Loss:**

Net Loss shall be the greater of either:

**1)** Your incurred expenses related to the organization, running and hosting of the **Golf Event**, less all savings of expenditure and less any Gross Revenue received and retained in respect of the **Golf Event.**

**2)** Loss of Gross Revenue with respect to the **Golf Event**, less all savings of expenditure and less all Gross Revenue received and retained by You from the **Golf Event.**

**Conditions**

The **Golf Event** Cancellation coverage will cease once the first ball is struck.

## SECTION V – GENERAL EXCLUSIONS

### Applicable to All Coverages under Sections I, II, and III

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**1. War and Military Action**

    **a.** War, including undeclared or civil war;

    **b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    **c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**2. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**3. Terrorism**

Any act of terrorism or threat or fear thereof regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

As used in this exclusion an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat or fear thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This Insurance also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism or threat or fear thereof.

**4. Biological / Chemical / Nuclear**

The actual or threatened malicious use of pathogenic or poisonous nuclear, biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

**5. Fraudulent, Dishonest or Criminal Acts**

Any loss resulting from, or arising out of, fraudulent or dishonest or criminal act or acts committed by you or any of your employees and also others to whom property may be entrusted.

This exclusion shall not apply to loss or damage to personal property while such property is in the custody of common carriers.

## SECTION VI – DEFINITIONS

1. **Abandonment** means the physical or legal inability to keep open the **insured event** during a period subsequent to regularly scheduled date and time of commencement of the **insured event**.

2. **Accident** means the sudden, unforeseen, and unexpected event occurring during the **insured event** or within thirty (30) days prior to the start of the **insured event** which, in the opinion of an independent medical practitioner, approved by us, entirely prevents the **insured speaker** from being able to participate in the **insured event** due to death or injury.

3. **Actual net revenue** means actual **gross revenue** received less: a) all incurred **expenses** and b) refunds made, whether contractual or voluntary.

4. **Anticipated net revenue** means **gross revenue** less all budgeted **expenses**.

5. **Cancellation** means the physical or legal inability to commence the **insured event** at the regularly scheduled date and time of commencement of the **insured event**.

6. **Curtailment** means the physical or legal inability to open or keep open the **insured event** for its original published duration, size or scope.

7. **Door Registration Receipts** means **money** collected at the **venue** for **insured event** registration or for tickets to the **insured event** and directly associated with the **insured event**.

8. **Enforced reduced attendance** means an abnormal and substantial reduction in the projected attendance for the **insured event**, of either attendees or exhibitors, based upon historical data for such **insured event**. Such reduction in attendance must be solely and directly the result of the same proximate cause and must be beyond your control, and beyond the control of the organizers of the **insured event**, the attendees or exhibitors at the **insured event**, and your financial supporters.

9. **Expenses** means your costs and charges in organizing, running and providing services for the **insured event**. **Expenses** do not include **insured financial commitments**.

10. **Gross revenue** means all monies paid or payable to you from every source arising out of the **insured event**.

11. **Insured event(s)** means the event or events covered by this policy as shown in the Declarations or in the attached schedule of insured events.

12. **Insured financial commitments** means, your written financial commitments unless you are released or discharged from such financial commitments, which meet all of the following conditions:

    a. Such commitments are necessary for the operation or commencement of the **insured event** and are intended to be discharged by a third party;

    b. Such commitments are made prior to any incident which could give rise to a covered loss with respect the **insured event** for which the **insured financial commitment** is undertaken.

13. **Messenger** means you, or any of your partners, or any employee while having care and custody of your **door registration receipts** outside the **venue**.

**14. Insured speakers(s) or entertainer(s)** means an individual person or persons scheduled to participate in the **insured event** as a principal speaker or entertainer as shown in the Declarations or in the attached schedule of insured speakers**.**

**15. Money** means:

   **a.** Currency, coins and bank notes in current use and having a face value; and

   **b.** Travelers checks, register checks and money orders held for sale to the public.

**16. Postponement** means the unavoidable deferment of the **insured event** to another time.

**17. Relocation** means the removal of the **insured event** to an alternative **venue**.

**18. Sickness** means a sickness first manifesting in the **insured speaker** during the **insured event** or within thirty (30) days prior to the start of the **insured event** which, in the opinion of an independent medical practitioner, approved by us, entirely prevents the **insured speaker** from being able to participate in the **insured event** due to death or injury.

**19. Theft** means the unlawful taking of **money** to the deprivation of you.

**20. Unavoidable travel delay** means an unexpected delay in pre-scheduled travel plans provided always that adequate time for arrival prior to the **insured event** has been allowed.  Such unexpected delay in pre-scheduled travel plans must be the sole and direct result of adverse weather or mechanical failure of a plane, train, or vehicle and result in the **insured speaker** being unable to participate in the **insured event.**

**21. Venue** means the location corresponding to the **insured event** where the **insured event** is scheduled to occur as shown in the Declarations.

## SECTION VII – CONDITIONS

**1. Limits of Insurance**

   The most we will pay for loss or damage is the applicable Limit of Insurance shown in the Declarations.

**2. Duties in the Event of a Loss**

   You must see that the following are done in the event of covered loss or damage:

   **a.** Upon the discovery of any event likely to give rise to a claim under this policy you shall give us prompt notice.  Include a description of such loss;

   **b.** You shall at all times do all things necessary to avoid or diminish a loss under this policy including but not limited to using your best efforts to reschedule a cancelled **insured event** to another time;

   **c.** You shall cooperate with us and, upon our request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, in the investigation or settlement of the claim;

**d.** Send us a signed, sworn proof of loss containing the information we request to investigate the claim.  You must do this within 30 days after our request.  We will supply you with the necessary forms;

**e.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or claim, including an insured's books and records.  In the event of an examination, an insured's answers must be signed.

**3. Concealment, Misrepresentation or Fraud**

This policy is void in the case of fraud by you as it relates to this policy at any time.  It is also void if you, at any time, intentionally conceal or misrepresent a material fact concerning, this policy or application, or any proof of loss.

**4. Subrogation**

We shall be subrogated to your right of recovery from any party, whether before or after payment of a loss, at our sole discretion.  In the event of any payment under this policy, we shall be subrogated to the extent of such payment to all of your rights of recovery and you shall execute all papers required and shall do everything that may be necessary to secure such rights.

**5. Other Insurance**

No other insurance shall be effected by you to protect the interest insured hereunder without our prior written approval. In the event that such other insurance is effected, this insurance shall be excess of such other policy of insurance.

**6. Premium**

As a condition precedent to coverage provided under this policy, the premium must be paid on or before the premium due date shown on the Declarations corresponding each **insured event.**  The premium is fully earned as of the commencement date of the **insured event** under the policy and will not be returned by us.

**7. Cancellation**

This policy may not be cancelled by you or us, except that we may cancel in the event of your failure to pay the premium when due.  In the case of such cancellation, all premium previously received by us shall be deemed earned and no return premium shall payable to you.

**8. Assignment**

This policy may not be assigned in whole or in part without our prior written consent.

**9. Records**

You shall keep accurate records containing all relevant information and particulars of the **insured event**.  We reserve the right to audit your books and records in the event of a loss.

**10. Premium Not an Expense**

The premium paid on this policy is deemed not to be an **expense** in the assessment of any claim hereunder.

**11. Salvage and Recoveries**

All salvages, recoveries and payments excluding proceeds from subrogation recovered or received subsequent to a loss settlement under this policy shall be applied as if recovered or received prior to the said settlement and shall accrue entirely to us until the sum paid by us has been recovered.

**12. Conformity to Statute**

Terms of this policy in conflict with the written laws of any state in which this policy is issued, which are applicable to this policy, are changed to conform to such laws.

**13. Territory**

This policy covers **insured events** for which the **venue** is located worldwide.

**14. Appraisal**

With respect to Section II. – Coverage D only, if you and we fail to agree on the amount of loss, either may make written for an appraisal of the loss. In this event, each party shall select a competent and impartial appraiser. The two appraisers shall select an umpire.

If the appraisers cannot agree upon an umpire, the selection of the umpire shall be submitted to the Judicial Arbitration and Mediation Services (hereinafter, "JAMS"). The umpire shall be selected in accordance with Rule 15 (as may be amended from time to time) of the JAMS Comprehensive Arbitration Rules and Procedures for the selection of a sole arbitrator/appraiser.

The appraisers will state separately the amount of loss. If the appraisers fail to agree, they shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. Each party shall pay its chosen appraiser and shall bear equally the other expense of the appraisal and of the umpire. If there is an appraisal, we will still retain our right to deny the claim.

**15. Suit Against the Company**

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law unless you have complied with all the provisions of this policy and unless commenced suit within twelve months after the loss occurs.

**16. Service of Suit**

It is agreed that in the event of the failure of the Company hereon to pay any amount claimed to be due hereunder, the Company hereon, at the request of the Assured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States.

Nothing in this Clause constitutes or should be understood to constitute a waiver of the Company's right to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or any State in the United States.

It is further agreed that service of process in such suit may be made upon Houston Casualty Company, Legal Department, 13403 Northwest Freeway, Houston, Texas 77040, U.S.A. and that in any suit instituted against the Company upon this Insurance, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any law process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this Insurance, and hereby designate Houston Casualty Company to whom the said officer is authorized to mail such process or a true copy thereof.

### 17. Auditable Limits of Insurance

With respect to loss covered under Coverages A and B only, if the estimated **gross revenue** earned from an **insured event(s)** is greater than the **gross revenue** reported by you to us at the inception date of this policy for the same **insured event**, then you shall report such variance to us prior to the commencement of the **insured event** to which the variance applies. If the actual **gross revenue** is more than 5% less than the **gross revenue** reported to us at the inception date of this policy for the same insured event, then you shall report to us such variance within sixty (60) days after the completion of the event. We will amend the limit of insurance only up to 20% less than the original **gross revenue.**

Upon reporting this variance to us, we will amend the Combined Limit of Insurance for Coverage A, B, & C for such **insured event** to the actual **gross revenue** earned from the **insured event** as reported by you. In addition, we will apply the rate used for calculating the premium for this **insured event** at the inception date of this policy to the amended Combined Limit of Insurance for Coverage A, B, & C for the **insured event** and determine if a return premium is due from us or an additional premium is due from you. Such premium shall be paid by you or us, as applicable, within thirty (30) days after receipt of notice.

Failure to report a variance in the **gross revenue** with respect to the **insured event** within sixty (60) days after the completion of the **insured event** to which the variance applies will result in a forfeiture of your right to an adjustment in the Combined Limit of Insurance for Coverage A, B, & C for such **insured event** and the corresponding premium adjustment.

**ENDORSEMENT NUMBER          1**

**Attaching to and forming part of Houston Casualty Company Policy No.  19/7004321**

**Assured:**          North American International Auto Show, LLC (NAIAS, LLC)

**It is hereby noted and agreed that:**

**SANCTION LIMITATION AND EXCLUSION CLAUSE**

No insurer shall be deemed to provide cover and no insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

15/09/10

LMA3100

**All other terms and conditions remain unchanged.**

**Effective Date:**          December 16, 2019
**Date of Issue:**          January 6, 2020

**HOUSTON CASUALTY COMPANY**

**By**          _____

**Authorized Representative**

**ENDORSEMENT NUMBER          2**

**This endorsement, effective:** 12:01 A.M., December 16, 2019
**Forms a part of Policy No.:** 19/7004321
**Issued to:** North American International Auto Show, LLC (NAIAS, LLC)
**By:** Houston Casualty Company

### LIMITED TERRORISM COVERAGE EXTENSION

SCHEDULE

This endorsement modifies insurance provided by the policy:

Notwithstanding Paragraph **3.** of **Section V – General Exclusions**, and in consideration of the additional premium charged as shown in the above Schedule, this policy is extended to include the following:

Loss or damage as a result of **Terrorism**, up to the Limit of Insurance shown below, and limited as per the terms and conditions of this endorsement.

A.   Limit of Insurance:

☒   $ 5,570,294 for Coverage A, B, C, D and E Combined in the aggregate, subject to the Limit of Insurance for each Insured Event

☐   50% of the Limit of Insurance for each **insured event** shown in the Declarations for Coverage A, B, C, D and E Combined, subject to a maximum $1,000,000 any one occurrence.

B.   For coverage to apply under this endorsement, all of the following conditions must be met:

1.   The act of **Terrorism** must occur:

☒   Within the circumference made by the 250 mile radius from the central point of the designated **venue;**

☒   Within one hundred (100) days before the **insured event**; or

☐   Within seven (7) days before **insured event**; and

2.   The loss or damage must otherwise be covered under this policy and this endorsement.

For the purposes of this endorsement, **terrorism** means an act, including, but not limited to, the use of force or violence of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

Notwithstanding the foregoing, this endorsement does not cover any loss, cost or expense directly or indirectly arising out of, contributed to or caused by, or resulting from or in connection with:

1. any fear of a potential act of **terrorism**

2. any threat of an act of **terrorism**, except this policy **is** extended to include loss or damage as a result of a threat of an act of **terrorism** in which such threat of an act of **terrorism** results in a public safety civil authority issuing a written order resulting in your inability to hold the **insured event** as scheduled, or

3. any act of **terrorism** involving a nuclear weapon or device or the emission, discharge, dispersal, release or escape of any chemical or biological agent.

If we allege for any reason that a loss is not covered by this endorsement the burden of proving the contrary shall be upon you.


**All other terms and conditions of this policy remain the same.**




**HOUSTON CASUALTY COMPANY**

**Authorized Representative**

**ENDORSEMENT # 3**

**This endorsement, effective:** 12:01 A.M., December 16, 2019
**Forms a part of Policy No.:** 19/7004321
**Issued to:** North American International Auto Show, LLC (NAIAS, LLC)
**By:** Houston Casualty Company

This endorsement modifies insurance provided by the policy:

**Definition 4 is amended to read as follows:**

4. **Expenses** means your costs and charges in organizing, running and providing services for the **insured event**. **Gross revenue** means all monies paid or payable to you from ticket sales, Any Day Passes, Supplier Preview Days, and Parking passes for the Auto Show and ticket sales for the Gallery Event only arising out of the **insured event**.

**All other terms and conditions remain unchanged.**

**HOUSTON CASUALTY COMPANY**

**Authorized Representative**

**ENDORSEMENT NUMBER          4**

**Attaching to and forming part of Houston Casualty Company Policy No.  19/7004321**

**Assured:**          North American International Auto Show, LLC (NAIAS, LLC)

**It is hereby noted and agreed that:**

**U.S. Terrorism Risk Insurance Act as amended in 2015**

**Not Purchased Clause**

*This Clause is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2015" as amended as summarized in the disclosure notice.*

It is hereby noted that the Underwriters have made available coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act as amended in 2015" ("TRIA") and the Insured has declined or not confirmed to purchase this coverage.

This Insurance therefore affords no coverage for losses directly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

**All other terms and conditions remain unchanged.**

**Effective Date:**          December 16, 2019
**Date of Issue:**          January 6, 2020

**HOUSTON CASUALTY COMPANY**

**By**          _____

**Authorized Representative**

TRIA Specialty Endorsement 3 (1/1/15)